[Cite as *State v. Bennett*, 2015-Ohio-173.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.   101206

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**LAWRENCE B. BENNETT**

DEFENDANT-APPELLANT

**JUDGMENT:**
SENTENCE REVERSED AND VACATED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-579690-A

**BEFORE:**   Boyle, P.J., Keough, J., and McCormack, J.

**RELEASED AND JOURNALIZED:**   January 22, 2015

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender
BY:   Jeffrey Gamso
Assistant Public Defender
310 Lakeside Avenue, Suite 200
Cleveland, Ohio   44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:   Lakesha M. Johnson
          Anthony Thomas Miranda
Assistant County Prosecutors
Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, P.J.:

**{¶1}** Defendant-appellant, Lawrence Bennett, appeals his convictions and sentence, raising two assignments of error for our review:

> 1. The trial court committed error when it refused Mr. Bennett's pre-sentence motion to withdraw his guilty plea.
>
> 2. The order of restitution included in the Journal Entry is void because it was not entered in open court as required by R.C. 2929.18(A)(1).

**{¶2}** We find no merit to his assignments of error, but reverse and vacate his sentence and remand for resentencing because we find that the trial court committed plain error with respect to allied offenses of similar import.

Procedural History and Factual Background

**{¶3}** In December 2013, Bennett was indicted on four counts: breaking and entering in violation of R.C. 2911.13(A), theft in violation of R.C. 2913.02(A)(1), vandalism in violation of R.C. 2909.05(B)(1)(b), and possessing criminal tools in violation of R.C. 2923.24(A). Each count carried a forfeiture specification attached to it. The charges arose from allegations that Bennett and an accomplice broke into Hamilton Marquette United Partnership and stole heavy gauge copper wire out of electrical boxes.

*Plea Hearing*

**{¶4}** In January 2014, Bennett withdrew his former plea of not guilty and entered a guilty plea to breaking and entering and theft. The remaining counts were nolled. The following took place at the plea hearing.

**{¶5}** The state outlined the plea agreement, indicating that both offenses were fifth-degree felonies subject to a potential prison sentence of six to twelve months.

**{¶6}** Defense counsel agreed that Bennett would be withdrawing his previously entered plea of not guilty and would be entering a guilty plea to the charges as outlined by the prosecutor. Defense counsel then stated, "[m]y understanding is that those two counts would merge together for purposes of sentencing."

**{¶7}** The trial court asked, "[d]oes the state agree with that?" The state replied, "[y]our honor, yes. Yes." The state then stated, "[a]nd I just have to interject, there is restitution in the amount of $9,912.44 that it's our understanding both defendants will agree to pay."

**{¶8}** The trial court proceeded to question Bennett. Upon questioning, Bennett informed the trial court that he was 46 years old, graduated from high school, was an American citizen, that he was not on probation or postrelease control at the time of the offense, and that no one had made any threats or promises to him "with regard to what sentence [he] would receive" if he entered into the plea. The trial court also asked Bennett, "[t]oday as you stand before me, are you under the influence of any alcohol, drugs, or medication that would impair your judgment?" Bennett replied, "[n]o, I'm not on anything."

**{¶9}** The trial court then reviewed Bennett's constitutional rights with him, and made sure that Bennett understood those rights and understood that he was giving those rights up by entering into the plea.

**{¶10}** The trial court also reviewed the potential penalties of each offense with Bennett, indicating that the offenses "would merge for purposes of sentencing" and because of that, he would face a potential prison sentence of six to twelve months in prison. The trial court further informed Bennett of postrelease control and of the consequences that he could face if he violated

the terms of his postrelease control. The trial court then asked the state and defense counsel if it had complied with Crim.R. 11, which both indicated that it had.

{¶11} At that point, the trial court asked Bennett, "[s]o how do you plead to count one, count two, felonies of the fifth degree[?]" Bennett replied, "[g]uilty." The following exchange then took place:

MR. BENNETT: I really don't have a choice.

THE COURT: You have a choice. Why do you have — why are you shaking your head?

MR. BENNETT: Well, would you care to explain it to him the way I explained it to you about what really happened. I'm just going to go with a leap of faith, sir, put myself in your hands.

[DEFENSE COUNSEL]: Your Honor —

THE COURT: As long as you're saying that, I mean, your choice to enter this plea agreement is yours alone. Okay. If you are not guilty, don't enter a plea agreement. If there is some mitigation circumstances that you want the court to consider, I'll consider those at sentencing. But, I'm not going to — if you think that you can enter a plea of guilty, then show up here at sentencing and say, I'm really not guilty, meld some type of justice into this resolution, don't enter a plea.

MR. BENNETT: Right.

THE COURT: But if there is — I'm not going to go into the facts of this case. You've been accused of breaking and entering, theft, vandalism, possession of criminal tools. Presumably at this point, your counsel has gone through the evidence that would be presented against you, you've had an opportunity to sit down and talk about what your chances of being convicted if you go to trial are on this. But, you — you know, it was brought up here, we're in the middle of trial right now, we've gone through a lengthy colloquy just to make sure you're doing this knowingly and voluntarily. You can't shake your head, say — I don't want to hear later on, I want to withdraw my plea. If you want to go to trial on this, we're more than likely — we're more than willing to provide you that trial date. Okay?

MR. BENNETT: Uh-huh. Uh-huh.

THE COURT: What do you want to do?

MR. BENNETT: I want to go with what he said.

THE COURT: You want to —

MR. BENNETT: I'm going through with it.

THE COURT: You understand you are entering a contract with the state of Ohio by doing that, right?

MR. BENNETT: I do.

THE COURT: You'll be subject to the punishments I just went over.

MR. BENNETT: Exactly.

THE COURT: You want to proceed?

MR. BENNETT: Yes.

THE COURT: How do you plead?

MR. BENNETT: Guilty.

THE COURT: The court accepts your guilty plea.

{¶12} At the close of the plea hearing, the trial court referred Bennett for a presentence investigation report.

*First Sentencing Hearing*

{¶13} On February 19, 2014, Bennett's defense counsel spoke extensively to the court about why he believed Bennett should receive probation, despite his lengthy criminal record. The prosecutor, who was not the same one who was at Bennett's plea hearing, requested that Bennett be sentenced to prison and pay restitution in the amount of $9,912.44.

{¶14} The court then asked if the two offenses were allied. The prosecutor replied that she did not believe that the offenses were allied, but said, "I think it may have been said at the plea by one of my colleagues that it may be allied." The prosecutor then told the court that she was advocating for consecutive sentences. At that point, Bennett said, "[t]hat wasn't the

agreement." The court asked Bennett, "[w]ere you under the impression that there was an agreement if you pled?" Bennett replied: "I was under the impression that there was a merger for the theft that occurred with the B&E and it would be served like that[.]" Bennett's defense counsel said that he remembered "something along the lines of what [Bennett] said, that it was a merger." Defense counsel for Bennett's codefendant stated that his notes from the plea hearing indicated that the two offenses merged for purposes of sentencing. The trial court continued the matter to explore what had occurred at the plea hearing with regard to allied offenses.

*Second Sentencing Hearing*

{¶15} On February 25, 2014, the sentencing hearing resumed. At the beginning of the hearing, defense counsel again requested that the court give Bennett probation because he "wants to change his life around." Defense counsel then said, "I spoke to Mr. Bennett at length this morning. He's curious as to, I guess, what the sentence — the possible sentence the court is willing to impose today?" The court replied, "[t]hat is the purpose of this hearing. That is what we are here about." Defense counsel then stated: "[Bennett] wishes to withdraw his plea. After this issue is addressed, I'd also move to withdraw as counsel."

{¶16} At that point, Bennett informed the court that he thought that when a person enters into a plea agreement, the person should know what his or her sentence will be. The trial court explained that it can be that way, but not always. The trial court then stated:

> I don't have the transcript before me, but the record should reflect I went through in the plea colloquy, Has anyone made any representations to you regarding what sentence you would receive if you enter this plea agreement? I wouldn't have accepted it unless you either said, yes, and everybody agreed to that; or, you said no representing no such representation.

{¶17} Bennett replied, "[a]t the time, I just trusted [my defense counsel.]" Bennett then stated, "I take Wellbutrin, and Vistaril, and Risperdal. At the time, I was not on it and not able

to think real clearly." The trial court replied, "[t]hat is another question that I would have asked of you at the time, whether you were on medication." Bennett responded, "I said, no, I wasn't on medication. But I was supposed to have medication." Bennett then stated, "[t]he plea agreement was, to me, way too open-ended." Bennett argued to the trial court that the police report was not correct on what had occurred at Hamilton Marquette United Partnership and that is "one of the reasons why I wanted to retract my plea because this ain't right." At that point, the trial court continued the sentencing hearing to hold a hearing on Bennett's motion to withdraw.

{¶18} At the close of the February 25, 2014 hearing, Bennett filed a written motion to withdraw his plea. In his written motion, Bennett informed the court that on the day of the plea hearing, he did not take his medication. Although that was the "strongest reason" for requesting to withdraw his plea, Bennett further indicated that he "thought that he should know what his sentence would likely be."

*Motion to Withdraw Hearing and Final Sentencing Hearing*

{¶19} The trial court held a hearing on Bennett's motion to withdraw on March 4, 2014. The state argued that the trial court should deny Bennett's motion to withdraw his plea. In doing so, the state reviewed the plea deal, the transcript of the plea hearing, and the facts of the case with the trial court.

{¶20} The court then read the portion of the transcript from the plea hearing where Bennett had indicated that he was entering into the plea because he did not have a choice (set forth earlier in this opinion). The court concluded by stating:

> All right. So it's clear from the transcript that what's different from most normal plea agreements where you just have a bare plea colloquy, we had an actual discussion on the seriousness of entering this plea agreement with the court basically telling the defendant point blank if he is not guilty of this, what's

alleged, he should absolutely not enter a plea. The court expressed a willingness to provide this defendant with the trial date if in fact he was not guilty.

{¶21} The court then asked, "[n]ow, in the transcript did we address the issue of whether these offenses were allied?" The prosecutor replied, "[y]es, that was addressed and the prosecutor that was representing the state did say that she agreed that they would merge." The court replied, "So apparently that was — that point was brought up in the plea negotiations and you did negotiate — it was not?" The prosecutor replied, "It was not brought in the plea negotiations. The first time it was mentioned was standing here in court and I think — [.]" The trial court interrupted the prosecutor and stated, "You got an agreement from the state that they would merge?" The prosecutor replied, "Right. After the fact, yes." The court then stated: "But when — so the defendant inadvertently received a benefit here because as I hear the facts, the state could argue that these two counts, breaking and entering and the theft, were both separate offenses that could be sentenced consecutively." The prosecutor replied, "Yes, your honor. That's correct."

{¶22} Defense counsel then argued to the court that at the plea hearing, when the court asked Bennett if he was under the influence of any medication or alcohol, and Bennett answered "no." Defense counsel pointed out that was exactly the problem; Bennett was not on any medication, but was supposed to be. Defense counsel argued that because Bennett was not taking his medication, he was not able to think clearly.

{¶23} The court disagreed, stating that there were not any issues relating to Bennett's competency at the plea hearing. The court explained that it recalled the plea hearing clearly. The court stated that there was no confusion at all; "it was like a complete lucidity of what was going on here," including Bennett's responses to the court and to his attorney. The court further

stated, "[n]othing in your demeanor or your responses or anything reflected in this transcript reflects to me someone that doesn't understand what's going on."

**{¶24}** Bennett argued that he did not agree with the state's version of the facts. Bennett stated that this case should have been a "minor misdemeanor or whatever trespassing carries." Bennett further argued that "there was a discrepancy in the plea agreement to the concurrent versus consecutive sentence and the amount of restitution that was supposed to be paid."

**{¶25}** The court concluded:

> All right. Thank you. I've taken everything that you've just stated under consideration. However, I want the record to reflect that from my vantage point I see no difference in demeanor or understanding than the same that I observed from the same individual, the defendant, at the plea hearing. I believe you were fully competent. There was no — we went through everything and this is an attempt, as reflected by the inquiry made through your counsel at the sentencing to find out what the sentence would be before proceeding. When you did not receive that, that's where this request to withdraw the plea came from. I believe that's insufficient.

**{¶26}** The court then stated:

> One second. And the record will reflect that you'd be subjecting yourself to further peril if the court were to let you withdraw your plea because you then would be subject to, at a conviction, consecutive sentences, so I'm not using that particular factor as a reason not to withdraw your plea, but taking into consideration the totality of the circumstances surrounding this plea, this resolution, the fact that the court emphasized your ability to contest these accusations at trial, now hearing the evidence of a relatively straightforward case of breaking and entering and theft.

**{¶27}** After denying Bennett's motion to withdraw, the trial court proceeded to sentencing. The trial court stated that it "could see no other alternative but to impose the

maximum sentence * * *, which is a one-year prison sentenced followed by three years post-release control." In the sentencing entry, however, the trial court sentenced Bennett to one year in prison on each count, to be served concurrently to one another. The trial court further notified Bennett in the sentencing entry that he could be subject to three years of postrelease control upon his release from prison. Additionally, the trial court ordered that Bennett pay Hamilton Marquette Limited Partnership restitution in the amount of $9,912.44. It is from this judgment that Bennett appeals.

### Motion to Withdraw Plea

**{¶28}** In his first assignment of error, Bennett contends that the trial court erred when it denied his presentence motion to withdraw his plea.

**{¶29}** A motion to withdraw a guilty plea is governed by the standards set forth in Crim.R. 32.1, which provides that "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."

**{¶30}** Generally, a presentence motion to withdraw a guilty plea should be freely and liberally granted. *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992). A defendant, however, does not have an absolute right to withdraw a plea prior to sentencing, and it is within the sound discretion of the trial court to determine what circumstances justify granting such a motion. *Id*. In ruling on a presentence motion to withdraw a plea, the court must conduct a hearing and decide whether there is a reasonable and legitimate basis for withdrawal of the plea. *Id*. at 527. This court has held that a trial court does not abuse its discretion in overruling a motion to withdraw a plea:

> (1) where the accused is represented by highly competent counsel, (2) where the accused was afforded a full hearing, pursuant to Crim.R. 11, before he entered the

plea, (3) when, after the motion to withdraw is filed, the accused is given a complete and impartial hearing on the motion, and (4) where the record reveals that the court gave full and fair consideration to the plea withdrawal request.

*State v. Tucker*, 8th Dist. Cuyahoga No. 97981, 2012-Ohio-5067, ¶ 7, quoting *State v. Peterseim*, 68 Ohio App.2d 211, 214, 428 N.E.2d 863 (8th Dist.1980), paragraph three of the syllabus.

**{¶31}** We find no abuse of discretion in the trial court's denial of Bennett's plea withdrawal request as the parameters set forth in *Peterseim* are met here: (1) Bennett was represented by highly competent counsel, (2) he was afforded a full Crim.R. 11 hearing before he entered into the plea, (3) he was given a full and impartial hearing on his motion to withdraw his plea, and (4) the record reveals that the court gave full and fair consideration to Bennett's plea withdrawal request. The court also recalled the plea hearing and could remember Bennett's mental state during the hearing, namely, that he was fully competent and understood exactly what was happening, even without his medication. Moreover, we agree with the court that Bennett simply had a change of heart when he realized that the court would not tell him what his sentence would be before he was sentenced.

**{¶32}** Thus, Bennett's first assignment of error is without merit with respect to the trial court's denial of his presentence motion to withdraw his plea.

**{¶33}** We do note, however, that it is clear from the transcript of the plea hearing that Bennett agreed to plead guilty to breaking and entering and theft *with the understanding* that the two offenses were allied offenses of similar import and would merge for purposes of sentencing. We further find that it is clear from the transcript that the trial court recognized that the merger of the offenses was part of the plea and that defendant was entitled to that benefit at sentencing.

**{¶34}** But the trial court never merged the two offenses prior to sentencing Bennett, nor did the state elect which of the allied offenses to pursue at sentencing. The trial court merely

stated at the sentencing hearing that it was sentencing Bennett to the maximum sentence of one year in prison. Although that appears as if the trial court intended to merge the two offenses at the sentencing hearing, it did not do so in its sentencing entry, compounding the issue even more. In the sentencing entry, the court sentenced Bennett to one year in prison on each count, and ordered them to be served concurrently to one another. This was incorrect. It is plain error for a trial court to sentence an offender on two allied offenses of similar import, even if it orders them to be served concurrently. *State v. Johnson*, 8th Dist. Cuyahoga No. 99656, 2013-Ohio-5430, ¶ 29, citing *State v. Walker*, 8th Dist. Cuyahoga No. 94878, 2011-Ohio-1556.

**{¶35}** Accordingly, we vacate Bennett's sentence and remand for resentencing where the state can elect which allied offense on which Bennett will be sentenced.

Restitution

**{¶36}** In his second assignment of error, Bennett maintains that the trial court erred when it ordered him to pay $9,912.44 in restitution to the victim when the trial court did not mention restitution at the sentencing hearing.

**{¶37}** R.C. 2929.18 allows trial courts to impose various financial sanctions, including restitution, on offenders. R.C. 2929.18(A) states that:

> Financial sanctions that may be imposed pursuant to this section include, but are not limited to, the following:

> (1) Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss. If the court imposes restitution, the court shall order that the restitution be made to the victim in open court, to the adult probation department that serves the county on behalf of the victim, to the clerk of courts, or to another agency designated by the court. If the court imposes restitution, at sentencing, the court shall determine the amount of restitution to be made by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall

not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. If the court decides to impose restitution, the court shall hold a hearing on restitution if the offender, victim, or survivor disputes the amount. All restitution payments shall be credited against any recovery of economic loss in a civil action brought by the victim or any survivor of the victim against the offender.

{¶38} Where a trial court fails to inform the defendant in open court that he or she is required to pay restitution, appellate courts will reverse the restitution order and "'remand for the trial court to address the matter in open court as required by law.'" *State v. Veto*, 8th Dist. Cuyahoga No. 98770, 2013-Ohio-1797, ¶ 18, quoting *State v. Burrell*, 8th Dist. Cuyahoga No. 96123, 2011-Ohio-5655, ¶ 32.

{¶39} After review, we find no error on the part of the trial court. Although the law requires courts to discuss restitution on the record prior to sentencing, in this case, Bennett agreed to pay the restitution as part of his plea deal. Moreover, the trial court did discuss the amount of restitution in open court with Bennett at his first sentencing hearing, without objection from Bennett. Although the sentencing hearing was ultimately continued to address Bennett's motion to withdraw his plea, restitution was still discussed, including the amount of restitution that Bennett agreed to pay as part of his plea.

{¶40} Accordingly, Bennett's second assignment of error is overruled.

{¶41} Judgment reversed; sentence vacated. This matter is remanded for resentencing.

It is ordered that appellant recover from appellee the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the

Rules of Appellate Procedure.

_____
MARY J. BOYLE, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
TIM McCORMACK, J., CONCUR